# United States Court of Appeals
## for the
## First Circuit

Case No. 22-1747

MASSACHUSETTS CORRECTION OFFICERS FEDERATED UNION, (MCOFU);
MICHAEL MOSHER,

Plaintiffs - Appellants

ZAC GUSTAFSON; DENINA DUNN; ANGELA PUCCI,

Plaintiffs

v.

CAROL A. MICI, in her official capacity as Commissioner of the Massachusetts Department of Correction; Maura Healey, in her official capacity as Governor of the Commonwealth of Massachusetts,

Defendants – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT OF
MASSACHUSETTS, BOSTON, IN CASE NO. 4-21-CV-11599
HONORABLE TIMOTHY S. HILLMAN U.S. DISTRICT JUDGE

### REPLY BRIEF OF PLAINTIFFS-APPELLANTS

JAMES F. LAMOND
MCDONALD LAMOND CANZONERI
*Attorneys for Plantiff-Appellants*
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600

1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiffs - Appellants Massachusetts Correction Officers Federated Union, by and through its undersigned counsel, hereby states that it is a nongovernmental non-profit corporate party, it has no parent corporation, and it has no publicly issued stock to be held by a publicly held corporation.

<i>/s/ James F. Lamond</i><br>
James F. Lamond

Dated:  March 8, 2023

# **TABLE OF CONTENTS**

**Page**

Corporate Disclosure ................................................................................... 2

Table of Authorities ..................................................................................... 4

I. The Non-Delegability Doctrine Does Not Shield the
Executive Order From The Reach Of The Contract Clause. ............................ 6

II. The Alleged Breaches of the CBA Caused By Implementation
of the EO Are Not Rendered Legally Insubstantial Because
the Negotiated Wage Rates Were Left Intact ...................................... 10

III. MCOFU's Contract Clause Challenge Is Not Legally Premature.
The Remedy-Extinguishing Aspect of the EO is Readily Apparent. ............... 13

IV. Conclusion .................................................................................. 16

Certificate of Compliance ............................................................................ 17

Certificate of Service .................................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page**

Allied Structural Steel Co. v. Spannaus
      438 U.S. 234 (1978) ....................................................................... 11; 12

Ambrose v. City of White Plains
      No. 10-CV-4946 (CS) 2018 WL 1635498, at *16
      (S.D.N.Y April 2, 2018), aff'd sub nom
      Barr v. City of White Plains
      779 F. App'x 765 (2d Cir. 2019) ...................................................... 15

Burlington N. R. Co. v. State of Neb.
      802 F.2d 994 (8th Cir. 1986) ............................................................ 10

City of Cambridge
      7 MLC 2111 (1981) ........................................................................... 8

City of Somerville v. Somerville Mun. Emps. Ass'n
      451 Mass. 493 (2008) ..................................................................... 6; 7

Donohue v. Cuomo
      980 F.3d 53 (2d Cir. 2020) .............................................................. 10

E & E Hauling Inc. v. Forest Pres. Dist. Of DuPage Cty., Ill.
      613 F.2d 675 (7th Cir. 1980) ........................................................... 15

Horwitz-Matthews v. City of Chicago
      78 F.3d 1248 (7th Cir 1996) ............................................................ 14

In re Financial Oversight and Management Board for Puerto Rico
      979 F.3d 10 (1st Cir. 2020) ............................................................. 10

In re Virginia Mason Hosp.
      357 NLRB 564 (2011) ...................................................................... 9

Inland Container Corp.
      298 NLRB 715 (1990) ...................................................................... 8

Case: 22-1747   Document: 00117983724   Page: 5   Date Filed: 03/08/2023   Entry ID: 6554029

Peerless Publications
    283 NLRB 334 (1987) ........................................................................ 9

Pure Wafer Incorporated v. Prescott, City of
    845 F.3d 943 (9th Cir. 2017) .......................................................... 13

Redondo Construction Corp. v. Izquierdo
    662 F.3d 42 (1st Cir. 2011) ...................................................... 14; 15

TM Park Ave. Associates v. Pataki
    214 F.3d 344 (2d Cir. 2000) ........................................................... 14

United Healthcare Ins. Co. v. Davis
    602 F.3d 618 (5th Cir. 2010) .......................................................... 12

United Steelworkers v. Warrior & Gulf Navigation Co.
    363 U.S. 574 (1960) ........................................................................ 11

Virginia Mason Hosp. v. Washington State Nurses Ass'n
    511 F.3d 908 (9th Cir. 2007) ............................................................ 9

Whirlpool Corp. v. Ritter
    929 F.2d 1318 (8th Cir. 1991). ....................................................... 11

Other Statutes

M.G.L. c. 115 .................................................................................................. 7

M.G.L. c. 150 .................................................................................................. 9

## I. The Non-Delegability Doctrine Does Not Shield the Executive Order From The Reach Of The Contract Clause.

The Defendants appear to contend that it does not matter whether, as MCOFU has alleged, the Department of Correction ("DOC") promised MCOFU it would not require members of the bargaining unit to receive vaccinations against contagious disease, and would not treat vaccine refusal as "just cause" for termination, because such promises are legally unenforceable under the "non-delegability doctrine." The Executive Order ("EO") is not subject to the Contract Clause, they assert, because it merely required the DOC to exercise a core managerial power *that it always had* and could not have previously relinquished through the process of collective bargaining. However, the contention that the EO caused no predicate breach of an *enforceable* term of the CBA misapplies that doctrine.

Massachusetts courts have said that if a statute specifically allocates a decisional power to a particular public official or entity, parties to a collective bargaining agreement cannot reach an *enforceable* agreement that *materially conflicts* with that statutory arrangement. A contract term will be considered to be in "material conflict" with a statute if it "usurps a discretionary power granted by the Legislature to a public authority that, *by statute*, cannot be delegated to another." City of Somerville v. Somerville Mun. Emps. Ass'n, 451 Mass. 493, 497 (2008)(emphasis added).

6

The City of Somerville decision reflects the classic application of that doctrine. There, a CBA was construed by an arbitrator to require that the City award a vacancy in the position of veterans' service coordinator to the most senior applicant, rather than the candidate selected by the city's mayor. The Massachusetts Supreme Judicial Court ruled that as to that particular position, the CBA's vacancy-filling term materially conflicted with a statute, M.G.L. c. 115, §10, which specifically conferred on city mayors "the exclusive authority to decide which candidate shall serve as the director of veterans' service . . .." 451 Mass. at 500. "[T]he city could not agree to collective bargaining provisions that interfered with th[at] specific legislative directive . . . ." Id.

Here, the Defendants identify no statute granting the DOC or its Commissioner the exclusive discretionary power to require DOC employees to be vaccinated against any particular infectious disease as a condition of continued employment. Indeed, they don't point to any statute investing the DOC commissioner with any kind of exclusive, non-delegable authority. They point to no appellate authority recognizing any such exclusive statutory power, whether or not tethered to a particular statute. And they point to no appellate authority construing a statute – *any statute* – as investing the DOC with non-delegable authority over the specific subject of vaccinations. The necessary precondition to the non-delegability doctrine – a *statute*, through which the Legislature has

7

entrusted exclusive, non-delegable decisional authority over a subject to the identified public authority – is entirely missing here.

Instead, the Defendants rely exclusively on a state administrative ruling to the effect that the DOC was not required to bargain with MCOFU over its summer 2021 decision to require DOC employees to receive the COVID-19 vaccine as a condition of continued employment. That administrative ruling cannot bear the weight that DOC asks of it. At the time the agency made that determination, MCOFU had already asserted – in this very action – that the parties had *already contracted over* that subject, and that the DOC had, by implementing the EO, breached its previously-made promises by requiring vaccination as a condition of employment, and that it would be in further breach of the CBA once it discharged those who declined to take the vaccine by the deadline.[1]

---

[1] The notion that an Employer's action can simultaneously be challenged as both a breach of a term of an extant CBA (i.e., a grievance) *and* a breach of its general duty to bargain before making changes in working conditions (i.e., a "prohibited practice") may seem inconsistent, but is in fact the very foundation for the "deferral doctrine" that labor agencies such as the NLRB and its Massachusetts analogue, the CERB/DLR, have long applied as a policy intended to advance collective bargaining. See, e.g., Inland Container Corp., 298 NLRB 715, 716 (1990)(noting that "[t[he Board has, from the inception of its deferral policy, deferred . . . alleged unilateral changes to grievance-arbitration.")(and explaining that "[a]lthough the complaint alleges that the Respondent has failed to meet its bargaining obligation by unilaterally implementing its substance abuse policy, we find that deferral will foster the Act's mandate [to foster the practice and procedure of collective bargaining] by requiring the parties to abide by their agreed-to method of resolving such disputes through the grievance and arbitration procedure . . . ."); City of Cambridge, 7 MLC 2111 (1981) (explaining that deferral to a

Nor can the Defendants assert, as a general proposition, that employers as a class possess inherent managerial authority to unilaterally establish and enforce vaccine mandates. In a closely analogous context, the National Labor Relations Board has determined that employers are not exempted, under the "core purpose" doctrine,[2] from the duty to bargain over decisions to implement flu-prevention policies [In Re Virginia Mason Hosp., 357 NLRB 564, 565 (2011)], and a negotiated agreement that was construed as prohibiting the employer from requiring vaccinations was deemed judicially enforceable [Virginia Mason Hosp. v. Washington State Nurses Ass'n, 511 F.3d 908, 912 (9th Cir. 2007)]. Indeed, it is fair to ask why, if the DOC already had the exclusive, non-delegable, core managerial power to order its employees to take the vaccine before the EO, it had not exercised it over the months that separated the introduction of the vaccine in late 2020/early 2021 and the October 17, 2021 deadline set by the EO. Its inaction is more consistent with the conclusion that it lacked the authority to act unilaterally in this manner.

---

contractual grievance-arbitration procedure is appropriate where the conduct complained of is potentially both a violation of c. 150E and a violation of the collective bargaining agreement between the parties, and where the parties through that agreement have committed themselves to mutually agreeable procedures for resolving their disputes).

[2] That doctrine, exempting certain topics from the scope of collective bargaining despite their impact on employee working conditions, was established in Peerless Publications, 283 NLRB 334 (1987).

### II. The Alleged Breaches of the CBA Caused By Implementation of the EO Are Not Rendered Legally Insubstantial Because the Negotiated Wage Rates Were Left Intact.

Relying on Contract Clause cases that involved enactments that caused breaches of the wage terms of collective bargaining agreements, the Defendants suggest that when the allegedly impaired contract is a collective bargaining agreement, only those enactments that interfere with negotiated wage terms are substantial enough to trigger Contract Clause application. No such narrow rule has ever been announced, and in any case, there are many decided cases in which the challenged enactment has been alleged to interfere with *other* CBA terms.[3]

Not only is there no case holding that the Contract Clause only applies to enactments that impact upon wage terms of CBAs, but any such rule would wholly ignore the numerous, reasonable expectations that parties come to have when terms and conditions of employment are set and regulated by negotiated CBAs. "A collective bargaining agreement is an effort to erect a system of industrial self-

---

[3] See, e.g., In re Financial Oversight and Management Board for Puerto Rico, 979 F.3d 10, 1 (1st Cir. 2020)(unions alleged enactments caused breaches of terms of collective bargaining agreements guaranteeing employees "certain number of vacation days" and "fringe benefits, including reimbursement for certain travel and clothing expenses"); Donohue v. Cuomo, 980 F.3d 53 (2d Cir. 2020)(enactment alleged to violate CBA term guaranteeing to retirees that the state employer would pay a fixed percentage of their health insurance premiums throughout their retirements); Burlington N. R. Co. v. State of Neb., 802 F.2d 994, 1006 (8th Cir. 1986)(employer alleged that enactment "eviscerate[d] its right under the . . . collective bargaining agreement to seek removal of cabooses from its trains.").

government" and it "gives rise to "a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578-580 (1960).  That resulting infrastructure yields a "relationship governed by an agreed-upon rule of law . . . ." Id.

That a CBA governs *numerous* topics does not negate the Contract Clause analysis, nor should enactments that impair non-wage terms presumptively be treated as causing only the "minimal alteration of contractual obligations [that] may end the inquiry at its first stage."[4]  "In determining the degree to which an obligation has been impaired, [courts] must be mindful that the contracts clause is designed to 'enable individuals to order their personal and business affairs according to their particular needs and interests.  Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them'." Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1322 (8th Cir. 1991)(quoting from Spannaus, supra, 438 U.S. at 245).

There is no analytically sound reason to treat non-wage terms of CBAs which are alleged to have been impaired by legislative enactments any differently than other promises for purposes of the "substantiality" inquiry.  Since this case remains at the dismissal stage, the inquiry is whether the pleaded facts plausibly support the conclusion that the EO, as implemented by DOC, 1) "upsets the

---

[4] Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 245 (1978).

reasonable expectations" that MCOFU had "at the time of contracting . . . regarding the specific contractual rights the state's action allegedly impairs" [United Healthcare Ins. Co. v. Davis, 602 F.3d 618, 627 (5th Cir. 2010)] or 2) has altered the DOC's contractual relationship by "superimposing . . . obligations" upon employees "conspicuously beyond those" to which the parties had "voluntarily agreed" [Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 240 (1978).]

    So viewed, MCOFU's allegations pass the substantiality test. It has alleged facts that plausibly support the conclusion that on account of the contagious disease term of the CBA (A. 111), as well as the "just cause" term (A. 99), it reasonably expected that the DOC would *not* require that covered employees either accept vaccines against viruses, novel or otherwise, or else forfeit their employment security. Because of the grievance and arbitration term of the CBA (A. 100-103), MCOFU could reasonably expect that if a breach *was* found, the designated arbitrator would have full authority to remedy it. The pleaded facts support the inference that once agreement had been reached, MCOFU had no reason to anticipate that the DOC would superimpose this new substantive requirement during the life of this CBA. MCOFU's allegations show the EO has caused more than "minimal alteration" of those reasonable expectation interests

relating to topics that go the core of employment security, impacts that are substantial enough to garner the attention of the Contract Clause.

### III. MCOFU's Contract Clause Challenge Is Not Legally Premature. The Remedy-Extinguishing Aspect of the EO is Readily Apparent.

Seeking preliminary injunctive relief, MCOFU filed this complaint in September 2021, after the DOC had started implementing the EO but before the deadline had arrived for final individual EO compliance. The contractual challenges that MCOFU alleged would follow under the parties' negotiated dispute resolution system – grievances alleging breaches of the CBA caused by DOC's implementation – are underway, but have not reached the "arbitration" step of the process. There is no merit to the Defendants' suggestion that the Contract Clause claim advanced in MCOFU's complaint remains legally premature until the moment that the DOC asserts the EO as a defense to liability and/or remedy.

It bears noting that the government defendants could defeat MCOFU's Contract Clause simply by announcing that if the arbitrator construes the CBA in MCOFU's favor, the DOC will abide by whatever remedies are ordered, the EO notwithstanding. That was the simple and dispositive path taken by the government promisor in Pure Wafer Incorporate v. Prescott, City of, 845 F.3d 943, 953 (9th Cir. 2017) ("The City has by now several times expressly represented that

the Ordinance does not operate to dissolve (that is, impair) its binding obligation to perform whatever it promised to do under the Development Agreement.").

But in any case, measuring the remedy-extinguishing impact of an enactment for "impairment" purposes is not like a board game, where one must wait to see if the promisor plays the enactment card when it has been found to be in breach and is finally facing the remedial consequences. Rather, the text of the enactment will usually be determinative. If it leaves the promisee with a remedy for breach of contract, that is, it simply breaks the promise of the contractual obligation and triggers a duty for the promisor to pay damages for the reasonably foreseeable consequences of the breach, there is no "impairment" in the relevant sense. If it creates a defense that prevents the promisee from obtaining damages or specific performance, there is an impairment. See generally Horwitz-Matthews v. City of Chicago, 78 F.3d 1248, 1251 (7th Cir 1996); TM Park Ave. Associates v. Pataki, 214 F.3d 344, 349 (2d Cir. 2000); Redondo Construction Corp. v. Izquierdo, 662 F.3d 42, 48 (1st Cir. 2011)(considering text of the enactment to assess if it prevents the promisee from obtaining a remedy for a demonstrated breach of its contract).

It has even been suggested that "if the municipality's breach results from the enactment of law, that is sufficient to raise to the level of an impairment." <u>Ambrose v. City of White Plains</u>, 2018 WL 1635498, at *16 (S.D.N.Y April 2, 2018), aff'd sub nom. <u>Barr v. City of White Plains</u>, 779 F. App.x 765 (2d Cir. 2019)(citing <u>E & E Hauling Inc. v. Forest Pres. Dist. Of DuPage Cty., Ill.</u>, 613 F.2d 675, 680-81 (7th Cir. 1980).

MCOFU has alleged facts that, along with the inferences they reasonably support, plausibly show that the DOC will rely on the EO as a shield to contract remedies should an arbitrator determine that its implementation of the EO breached one or more terms of the CBA. Having discharged employees for not receiving the vaccine, it is hard to see the DOC abiding by an arbitrator's order to reinstate the same officers. The text of the EO alone – requiring that DOC employees "must demonstrate that they have received COVID-19 vaccination and maintain full COVID-19 vaccination as a condition of continuing employment" [A. 166] – leaves no room for the presumptively-appropriate remedy of reinstatement. That is sufficient, at the pleading stage, to support MCOFU's claim that the enactment has "impaired" its "ability to obtain a remedy for a demonstrated breach." <u>Redondo Construction Corp.</u>, 662 F.3d at 48.

## IV. Conclusion

For the reasons stated above, as well as those set out in their primary brief, the Appellants respectfully submit that they have pled facts sufficient to permit them to advance their challenge to the DOC's implementation of the EO.

                    Respectfully submitted,

                    For the Plaintiffs-Appellants,

                    Massachusetts Correction Officers Federated Union,

                    By its attorneys,

                    */s/ James F. Lamond*
                    James F. Lamond, #10400
                    McDonald Lamond Canzoneri
                    352 Turnpike Road, Suite 210
                    Southborough, Massachusetts 01772-1756
                    (508) 485-6600
                    jlamond@masslaborlawyers.com

Dated: March 8, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7(B) because this brief contains 2483 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using a MacIntosh Computer, Microsoft Word for Mac 2011 in Times New Roman 14 point font.

*/s/ James F. Lamond*
James F. Lamond

Dated:  March 8, 2023

## CERTIFICATE OF SERVICE

      I hereby certify that on March 9, 2023 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: Jennifer E. Greaney, Assistant Attorney General (Jennifer.Greaney@mass.gov); Christine Fimognari, Special Assistant Attorney General (Christine.Fimognari@mass.gov); Grace Gohlke, Assistant Attorney General (Grace.Gohlke@mass.gov); Jessie J. Rossman, Esq. (jrossman@aclum.org); and Matthew R. Segal, Esq. (msegal@aclum.org).

                                              */s/ James F. Lamond*
                                              James F. Lamond

Dated: March 8, 2023